IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Vincent Lara, ) | |
| Plaintiff, ) | Case No. 22 C 50014 |
| vs. ) | |
| ) | Judge Philip G. Reinhard |
| Rock Valley College Police Dept., et al., ) | |
| Defendants. ) | |

**ORDER**

For the reasons stated below, Rock Valley College Police Department and Rock Valley College are dismissed as defendants in this action. The motion to dismiss [18] of the remaining defendant, Rock Valley College Board of Trustees, is granted. The complaint is dismissed without prejudice. Plaintiff may file an amended complaint within 28 days.

**STATEMENT-OPINION**

Plaintiff, Vincent Lara, brings this action against defendant, his former employer, Rock Valley College Board of Trustees, in its official capacity.[1] Plaintiff claims he is entitled to relief from defendant because he was injured by defendant when it unlawfully discriminated against, harassed, constructively discharged, and maliciously prosecuted him because he served as a member of the United States Army Reserve. He asserts the following legal theories support his claim: (1) violation of the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. § 4301, et seq. ("USERRA") (Counts I and II), (2) malicious prosecution (Count III), (3) violation of the Illinois Service Member Employment and Reemployment Act, 330 ILCS 61/1-1, et seq. ("ISERRA") (Counts IV and V). Jurisdiction is properly pled pursuant to 38 U.S.C. § 4323(b)(3) & (j) and 28 U.S.C. § 1367. Defendant moves [18] to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

The facts are taken from plaintiff's complaint. On a motion to dismiss, the court takes all well-pleaded facts as true and draws all reasonable inferences in plaintiff's favor. *White v. United Airlines, Inc.*, 987 F.3d 616, 620 (7th Cir. 2021). Plaintiff was employed by defendant as a police officer. Plaintiff also served in the United States Army Reserve ("Reserve"). When plaintiff

---

[1] The complaint also named as defendants the Winnebago County Sheriff's Department ("Sheriff's Department"), the Rock Valley College Police Department ("RVCPD") and Rock Valley College ("College"). Plaintiff filed a notice [44] that he did not oppose the Sheriff Department's motion to dismiss [49] and consented to the dismissal of the Sheriff's Department as a defendant. The court entered an order [46] granting the Sheriff's Department's motion to dismiss and dismissing the Sheriff's Department from this action. In its motion to dismiss [18], defendant sought dismissal of RVCPD and College because they are not suable entities under Illinois law. In his response brief, plaintiff consents to the dismissal of RVCPD and College. RVCPD and College are dismissed. Leaving the Rock Valley College Board of Trustees, in its official capacity, as the only defendant.

1

began working for defendant, he expected to serve two to three days per month on active duty with the Reserve and participate in one annual training per year and occasional Army-sponsored schools, which would last approximately two weeks. Throughout the years, plaintiff advanced in rank and was given more responsibilities in the Reserve. These promotions required him to work more than two to three days per month for the Reserve.

Defendant's practice concerning employees who were military reservists allowed those employees to receive concurrent compensation from defendant and, also, from the United States military for days they were performing duties for the military. Sergeant Coe, plaintiff's second-level supervisor at defendant, became increasingly concerned with the time plaintiff was devoting to his Army duties and stated there was a possibility that plaintiff volunteered for an extra Army detail to "take advantage of the military leave practice." Other police officers employed by defendant complained and made sarcastic remarks about the amount of time plaintiff was allowed to spend performing duty with the Reserve. When Coe asked defendant's payroll department about defendant's military pay policy, he was informed the policy allowed concurrent compensation.[2]

In September 2017, plaintiff provided a letter from his Army company commander, Captain Eisel, to Coe and other supervisors at defendant asking for cooperation in granting plaintiff leave to attend to his Reserve duties and describing the rights provided plaintiff under USERRA. At about the same time, Coe took over scheduling responsibilities with respect to plaintiff from plaintiff's first-line supervisor, Sergeant Hoshaw. After assuming responsibility for reviewing plaintiff's requests for military leave, Coe focused on whether plaintiff had volunteered for certain Reserve mobilizations and what the purpose of the mobilizations were. Coe instructed plaintiff that he must not volunteer for military duty without first receiving permission from his supervisors at defendant and repeatedly admonished plaintiff for requesting military leave for missions for which plaintiff had volunteered. On one occasion Coe told plaintiff that plaintiff was insubordinate to Coe and Hoshaw for not checking with them prior to volunteering for an Army Reserve mission. Neither USERRA, nor its Illinois equivalent, requires a Reservist to seek permission from a public employer to participate in any Reserve duties, mission, deployments, or mobilizations.

Coe particularly questioned the military orders plaintiff received to represent his unit at an Army-sponsored event in Washington, D.C. known as the Army Ten-Miler. Coe referred to this event as a "run/festival" and believed the purpose for plaintiff's attending the Army Ten-Miler was to take a recreational trip with his family under the guise of legitimacy. Coe initially ordered plaintiff to take vacation time for this event. The Army Ten-Miler is an annual event incorporating recruiting, public outreach, fitness promotion, and professionalism. U.S. Army units from around the world send representatives to support the event. After Coe's questioning of the propriety of plaintiff's participation in the Army Ten-Miler, plaintiff asked the Army to rescind his orders to the event and his orders were rescinded. On September 27, 2017, plaintiff advised Coe that plaintiff was rescinding his request for military leave for the Army Ten-Miler.

---

[2] ISERRA requires Illinois public employers, like defendant, to provide this concurrent compensation to employees for up to 30 days per year. 330 ILCS 61/5-10(a) ("During periods of military leave for annual training, public employees shall continue to receive compensation as a public employee for up to 30 days per calendar year and military leave for purposes of receiving concurrent compensation may be performed nonsynchronously.")

Coe opened a criminal investigation into whether plaintiff had been manipulating defendant's "liberal military leave policy" for plaintiff's benefit. Coe wrote a formal police report referencing Coe's concerns about whether plaintiff had volunteered for certain missions and the value of those missions to plaintiff's training or military readiness. Coe wrote of his concern that plaintiff was volunteering for extra details to take advantage of the liberal voluntary leave practice often getting three to four military leave days per month.

On October 2, 2017, Coe met with Army Captain Eisel to question him about plaintiff's military leave. During that meeting, Coe told Eisel that on August 5, 2017, Coe had surveilled plaintiff and had video footage of plaintiff, wearing his Army uniform, being on the Rock Valley campus meeting with an unknown individual to buy a musical instrument for plaintiff's daughter. At that time, plaintiff was in transit from his home to his Reserve duty station. Coe asked Eisel about USERRA's provisions concerning time allotted to plaintiff to rest between his shift with defendant and the beginning of his Reserve duty. During this conversation, Coe did not tell Eisel that plaintiff worked the night shift for defendant, which entitled plaintiff to a period of rest before traveling to his Reserve duty.[3] Without this information, Eisel opined to Coe that on at least one occasion under USERRA plaintiff would not be entitled to receive the day off prior to his Reserve duty.

On October 6, 2017, plaintiff met with Coe in Coe's office. Coe advised plaintiff that Coe had opened an investigation[4] into plaintiff's military leave and that there would be a compelled interrogation of plaintiff, which would be recorded by a court reporter, and attended by defendant's attorney. Coe advised plaintiff he would be compelled to answer questions pertaining to his attendance. Coe threatened plaintiff with being arrested and prosecuted. After these threats, plaintiff verbally stated his intent to resign his employment with defendant. Plaintiff followed with a written statement indicating his intent to resign. Shortly thereafter, plaintiff asked to rescind his resignation and Coe refused. Coe told plaintiff that plaintiff's request to attend the Army Ten-Miler appeared dishonest and an unjustified request for military leave.

On October 18, 2017, Coe went to the Detective Bureau of Winnebago County Sheriff ("Sheriff") concerning his investigation of plaintiff's military leave requests. Coe provided the Sheriff with the police report he had prepared. Coe advised the Sheriff that plaintiff had provided at least one "Fictious Order" from plaintiff's unit regarding military duty to be performed in October 2017. However, no such "Fictious Order" exists. Coe provided this false information to the Sheriff to induce the Sheriff to pursue criminal charges against plaintiff after plaintiff had resigned. The Sheriff did not conduct any independent investigation and obtained an arrest warrant for plaintiff based on the information provided by Coe. Plaintiff was notified of the warrant by phone by a Sheriff's detective. Plaintiff drove to the Sheriff's office where he was handcuffed and arrested.

---

[3] "If the employee performs a full night shift for the civilian employer and travels directly from the work site to perform a full day of uniformed service, the employee would not be considered fit to perform the uniformed service. An absence from that work shift is necessitated so that the employee can report for uniformed service fit for duty." 20 C.F.R. § 1002.74(a).

[4] Defendant argues this investigation was a workplace investigation initiated under the terms of the Illinois Police Officers' Disciplinary Act, 50 ILCS 725/1, et seq. However, plaintiff alleges it was a criminal investigation, which the court accepts as true on a motion to dismiss. *White*, 987 F.3d at 620.

The Army found there were no discrepancies between plaintiff's military leave requests to defendant and his Reserve duties performed. The Division Security Manager and Chief Intelligence Officer of plaintiff's Reserve unit, Colonel Rose, confirmed that there were no discrepancies between plaintiff's requests for time off from defendant and the documentation of the Reserve duty plaintiff performed. In a memorandum, Colonel Rose detailed the dates plaintiff had been present pursuant to military orders from 2013 through 2017. He concluded that "[g]iven the absence of any discrepancies between requests for time off from [defendant] and documentation confirming Army Reserve duty performed, my initial and continued assessment is that the charges against [plaintiff] are unfounded."

The Winnebago County State's Attorney dismissed the criminal case against plaintiff in August 2019 and plaintiff's arrest records were expunged on January 15, 2020. Plaintiff alleges the criminal allegations against plaintiff were concocted by Coe based on Coe's resentment of plaintiff's participation in the Army Reserve, which Coe perceived as distracting plaintiff from his duties to defendant.

The United States has an all-volunteer military force. *White*, 987 F.3d at 625. In 1994, Congress passed USERRA "with the goal of prohibiting civilian employers from discriminating against employees because of their military service." *Id.* at 619. USERRA provides that the "term 'service in the uniformed services' means the performance of duty on a voluntary or involuntary basis . . . and includes active duty, active duty for training, initial active duty for training, [and] inactive duty training." 38 U.S.C. § 4303(13). "The term 'benefit', 'benefit of employment', or 'rights and benefits' means the terms, conditions, or privileges of employment, including any advantage, profit, privilege, gain, status, account or interest (including wages or salary for work performed) that accrues by reason of employment contract or agreement or an employer policy, plan, or practice and includes rights and benefits under a pension plan, a health plan, an employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental unemployment benefits, vacations, and the opportunity to select work hours or location of employment." 38 U.S.C. § 4303(2).

Under USERRA, a "person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation." 38 U.S.C. § 4311(a). Further, USERRA provides that an "employer may not discriminate in employment against or take any adverse employment action against any person because such person . . . (4) has exercised a right provided for in this chapter." 38 U.S.C. § 4311(b). Both 38 U.S.C. § 4311(a) and (b) require a materially adverse employment action for the employer's discrimination or retaliation to be actionable. *Crews v. City of Mt. Vernon*, 567 F.3d 860, 869 (7th Cir. 2009).

The United States Supreme Court has stated that USERRA "is very similar to Title VII." *Staub v. Proctor Hospital*, 562 U.S. 411, 417 (2011). The Seventh Circuit has adopted the Title VII requirement that a materially adverse employment action is required for employer liability under USERRA sections 4311(a) and (b). *Crews*, 567 F.3d at 869; *Maher v. City of Chicago*, 547 F.3d 817, 824 (7th Cir. 2008). "Adverse employment actions generally fall into three categories (1) termination or reduction in compensation, fringe benefits, or other financial terms of employment; (2) transfers or changes in job duties that cause an employee's skills to atrophy and

reduce future career prospects; and (3) unbearable changes in job conditions, such as a hostile work environment or conditions amounting to constructive discharge[5]. To be actionable, an employment action must be a significant change in employment status … or a decision causing a significant change in benefits. "Adverse employment actions are often economic injuries, but also extend beyond readily quantifiable losses." *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 980 (7th Cir. 2014) (quotation marks and citations omitted) (alteration in original). The critical issue is "whether the alleged discrimination caused a material change in the employment relationship." *Lewis v. City of Chicago*, 496 F.3d 645, 654 (7th Cir. 2007).

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If the complaint (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level, this requirement is met. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal,* 556 U.S. 662 (2009). Plaintiff need only allege the events he believes entitles him to damages from defendant. *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014). Informing defendant of the factual basis for his complaint is all that is required "to stave off threshold dismissal for want of a statement of [his] claim." *Id*. "A complaint need not identify legal theories and specifying an incorrect legal theory is not a fatal error." *Rabe v. United Air Lines, Inc.*, 636 F.3d 866, 872 (7th Cir. 2011).

To prevent dismissal under Rule 12(b)(6) in a Title VII case, a complaint alleging discrimination based on the plaintiff's membership in a protected class need only allege that the employer instituted a specified adverse employment action against the plaintiff on the basis of the plaintiff's membership in the protected class. *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1028 (7th Cir. 2013) (sex discrimination). "In these types of cases, the complaint merely needs to give the defendant sufficient notice to enable him to begin to investigate and prepare a defense." *Id.* "Employers are familiar with discrimination claims and know how to investigate them, so little information is required to put the employer on notice." *Carlson v. CSX Transportation Co.*, 758 F.3d 819, 827 (7th Cir. 2014). However, when the alleged adverse employment action falls into the "unbearable changes in job conditions such as a hostile work environment or conditions amounting to constructive discharge" category, in order to survive a 12(b)(6) motion, plaintiff must allege facts that show the harassment based on his membership in a protected class was severe or pervasive so as to alter the conditions of his employment and create a hostile or abusive working environment. *Alamo v. Bliss*, 864 F.3d 541, 549 (7th Cir. 2017). Constructive discharge requires alleging facts from which it can be inferred that a reasonable person would have felt compelled to resign because the working conditions were so intolerable. *See Suders*, 542 U.S. at 147.

To be actionable as an adverse employment action, an employer's actions must affect the employee's working conditions. Being investigated for and charged with a crime, arrested, briefly jailed, and tried on the charges do not involve working conditions even when the

---

[5] A constructive discharge based on a hostile work environment "entails something more" than an actionable hostile work environment. *Pennsylvania State Police v. Suders*, 542 U.S. 129, 147 (2004). A "hostile-environment constructive discharge" occurs where the "working conditions [are] so intolerable that a reasonable person would have felt compelled to resign." *Id.*

employer is a law enforcement agency, and the criminal charges arise from alleged criminal behavior committed by the employee during the course of his employment. *Swearnigen-El v. Cook County Sheriff's Department*, 602 F.3d 852, 859-60 (7th Cir. 2010). Therefore, plaintiff's allegations concerning the criminal investigation by Coe, Coe's turning his investigation report over to the Winnebago County Sheriff, the subsequent charges by the State's Attorney, and the pendency of those charges for approximately 19 months before they were dismissed do not support a claim he suffered an adverse employment action based on unbearable changes in job conditions -- hostile work environment or constructive discharge -- because they do not involve plaintiff's "job conditions" at all. *Id*.

In his response [43], plaintiff asserts the malicious prosecution theory of liability he alleges in his complaint also arises under USERRA. Dkt # 43, p. 9. He makes this assertion to oppose defendant's argument that a claim under a malicious prosecution theory is untimely. Plaintiff cites no authority for USERRA covering malicious prosecution. Given that USERRA requires an adverse employment action for an actionable claim and that, as just discussed, a criminal prosecution is not an adverse employment action because it does not involve plaintiff's job conditions, a claim based on alleged malicious prosecution is not available under USERRA. *See id*.

Plaintiff's other allegations fall short of alleging facts that plausibly suggest he was subject to harassment so severe or pervasive as to alter the conditions of his employment and create a hostile or abusive working environment. *Alamo*, 864 F.3d at 549. In determining whether an actionable hostile work environment exists, the court looks to "all circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interference with an employee's work performance." *Stitz v. American Family Mutual Insurance Co.*, 585 F. Supp.3d 1187, 1191 (E.D. Wis. 2022) (quotation marks omitted) *quoting*, *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002).

Plaintiff does not allege anything that suggests any of the conduct was severe, physically threatening, humiliating, or unreasonably interfered with his work performance. Apart from Coe, plaintiff alleges that other officers complained and/or made sarcastic comments about his military leave. As to Coe, he alleges Coe questioned plaintiff about whether he volunteered for certain military missions, complained about his volunteering, told him not to volunteer, and questioned the propriety of plaintiff's orders to the Army Ten-Miler -- leading plaintiff to seek and obtain the recission of those orders. He does not allege anything that suggests any of this was threatening, humiliating or that he was ever physically threatened. He does not allege any of it interfered with his work performance.

What plaintiff's complaint alleges is that Coe did not like the fact plaintiff was taking military leave and so pressed plaintiff on the reasons for his military leave requests, told him not to volunteer for military duty, and discouraged him from taking leave he was allowed to take to the point plaintiff obtained recission of orders he had received so as not to take military leave for that duty. While under the Family Medical Leave Act ("FMLA") (29 U.S.C. § 2615(a)(1) an employer's discouraging the use of FMLA leave can be actionable, *Ziccarelli v. Dart*, 35 F.4th 1079, 1088 (7th Cir. 2022), USERRA does not have a like provision. USERRA requires a materially adverse employment action by the employer. *Crews*, 567 F.3d at 869; *Maher*, 547

F.3d at 824. Plaintiff's complaint has not alleged an adverse employment action actionable under USERRA so the claims under USERRA are dismissed. This disposes of all the federal claims.

A district court may decline to exercise supplemental jurisdiction where it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C.§ 1367(c)(3). "Absent unusual circumstances, district courts relinquish supplemental jurisdiction over pendant state law claims if all claims within the court's original jurisdiction have been resolved before trial." *Coleman v. City of Peoria*, 925 F.3d 336, 352 (7th Cir. 2019). Subject matter jurisdiction in this case was premised on federal question jurisdiction and all federal claims have been dismissed so relinquishment of supplemental jurisdiction over the state law claims (in Counts III, IV, V) would be the norm. The court exercises its discretion to decline to exercise supplemental jurisdiction over the state law claims and dismisses them without prejudice.

Plaintiffs normally should be given leave to amend after dismissal of an initial complaint. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago*, 786 F.3d 510, 518 (7th Cir. 2015). Plaintiff may file an amended complaint within 28 days.

For the foregoing reasons, Rock Valley College Police Department and Rock Valley College are dismissed as defendants in this action. The motion to dismiss [18] of the remaining defendant, Rock Valley College Board of Trustees, is granted. The complaint is dismissed without prejudice. Plaintiff may file an amended complaint within 28 days.

Date: 3/06/2023                ENTER:

_Philip G. Reinhard_
United States District Court Judge

Electronic Notices.