IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| VINCENT P. LARA, | ) | |
| Plaintiff, | ) | Case Number 22-50014 |
| v. | ) | Judge Philip G. Reinhard |
| | ) | |
| ROCK VALLEY COLLEGE BOARD | ) | Magistrate Margaret J. Schneider |
| OF TRUSTEES, | ) | |
| Defendants. | ) | |

**OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Vincent Lara, ("Lara"), First Sergeant (E-8) United States Army Reserve, ("Army Reserve"), distinguished veteran of the war in Iraq awarded the Army Commendation Medal, and former sworn law enforcement officer for the Rock Valley Community College Police Department governed by the Rock Valley Community College Board of Trustees ("defendants"), by and through the undersigned attorneys MAHER LEGAL SERVICES PC, respectfully submits this opposition to defendant's motion to dismiss (Doc. 72) Lara's first-amended complaint. (Doc. 66).

**BACKGROUND**

On March 6, 2023, the Court dismissed Lara's original complaint with leave to amend. (Doc. 62). The court found that the series of increasingly more severe, pervasive, and intolerable changes in Lara's working conditions resulting from his having been discriminated against, retaliated against, having employment benefits withheld, and constructively discharged based on antimilitary animus did not amount to one or more materially adverse employment actions.

In the court's view, Lara did not state violations of the *Uniformed Services Employment and Reemployment Rights Act*, 38 U.S.C. § 4301, *et seq.*, ("USERRA"), designed to protect military members from workplace discrimination, retaliation, denial of employment benefits, and termination motivated by antimilitary animus.

Lara, then a full-time civilian sworn law enforcement officer and part-time Army Reserve military police officer, *Twice the Citizen* as the Army Reserve motto goes,[1] alleged facts in his original complaint summarized here: Lara's public employer singled him out as the only target of a bad-faith criminal investigation into Lara's military leave, travel time, performance of duty, pay, the validity and necessity of Lara's military orders and duties, civilian pay, sick call, personal leave, and family life.

In addition to defendant's deceitful relation of misleading misinformation to Army Reserve officers to paint Lara as sneaky, a fraud, and a thief, defendants unlawfully denied military leave, compelled Lara to take personal leave for military service, required Lara to find substitutes for duty when Lara was on military leave, surveilled Lara and his daughter, generated a "fictitious" or fake military order and then accused Lara of fabricating it to threaten Lara with career and liberty-ending removal from police service followed by Lara's public arrest, prosecution, and looming conviction and confinement during a series of increasingly more hostile, harassing, discriminating, retaliating, and benefit-denying leading to Lara's resignation – a step Lara took to preserve his mental well-being, safeguard future law enforcement opportunities, (better to resign than be terminated), and avert being "put into the system" and having to undo that process.

The court ruled that Lara did not meet Federal Rule of Civil Procedure ("Rule") 8(a)(2)'s requirement to allege a "short and plain" statement demonstrating entitlement to relief. *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014). Motivated by jealousy of Lara's service in Iraq, laudable career in the Army Reserve, public recognition, and the "extra" money Lara made while causing "paperwork and scheduling headaches" due to military leave, the bad-faith criminal investigation was a plot to make work so intolerable to compel Lara's resignation. And it worked.

---

[1] US Army Unit Crest: US Army Reserve Command - Motto: TWICE THE CITIZEN (milfordarmynavy.com).

Defendant's malice resulted in 19 months of post-employment arrest, jailing, prosecution, attorneys fees, public scorn, media coverage, eventual dropping of larceny charges, and expungement – but at momentous costs in ending Lara's civilian law enforcement career, (Lara is now "black-balled" or "black-listed"), ending his part-time employment with a small local village police department, endangering his part-time military police career, incurring lifestyle-altering lost pay and benefits, future pay, attorneys' fees and court costs, devastating emotional strain, loss of personal leave, loss of military leave, loss of retention of employment, and stymying anxiety. But none of the ruinous allegations were true. Defendants, a community college's police department, knew so. After all, defendants propagated falsehoods and other violations of the law while denigrating their oaths and besmirching their offices to crush Lara.

Evidence knowingly withheld or unpursued was a single interview away, surely a lead a competent police department would pursue, if only that were the motivation spawning the investigation. As it turns out, a Colonel, ("full-bird" or "0-6" who typically must have spent 22 – 25 years in service to attain such a prestigious an elevated rank), Army Reserve officer serving as lead personnel officer, reviewed all of Lara's military orders and associated performances of duty.

Characteristic of Lara's decades of honorable and distinguished Army service, there were no discrepancies that would raise concern about Lara's integrity. Surely, a good-faith investigation would have followed evidence to natural ends, unconcerned about outcomes other than the truth.[2] As detailed in Lara's amended complaint, the investigation was anything but lawful. The hatchet-job was sired by antimilitary animus, hate, and jealousy.

---

[2] Indeed, as discussed in Lara's complaint, (Doc. 66), defendants traveled to and met with Lara's Army commander to misinform that officer that Lara was manipulating military leave and subsequently based further disparaging denigrations based on the strained conclusions of an Army officer defendants purposefully underinformed and misinformed to construct a false narrative aimed at destroying Lara and Lara's careers.

A basis on which the court dismissed the original complaint was the finding that a criminal investigation was not an adverse employment action affecting Lara's job conditions.

> To be actionable as an adverse employment action, an employer's actions must affect the employee's working conditions. Being investigated for and charged with a crime, arrested, briefly jailed, and tried on charges does not involve working conditions even when the employer is a law enforcement agency, and the criminal charges arise from alleged criminal behavior by the employee during the course of his employment.

(Doc. 62 at 6). The court determined "a criminal prosecution is not an adverse employment action because it does not involve plaintiff's job conditions" *id*, that Lara did not "allege anything that suggests any of this was threatening, humiliating or that he was every physically threatened. He does not allege any of it interfered with his work performance." *Id*.

Pursuant to the court's grant of leave, on April 18, 2023, Lara filed his first amended complaint (Doc. 66). On May 26, 2023, defendants filed a Rule 12(b)(6) motion to dismiss Lara's re-pled complaint (Docs. 71 and 72), which Lara now opposes.

## **FIRST AMENDED COMPLAINT SATISFIES RULE 8(a)(2)**

Lara pled facts showing Lara's part-time service in the Army Reserve motivated defendants to engage in prohibited conduct which "caused a material change in the employment relationship," *Lewis v. City of Chicago*, 496 F.3d 645, 654 (7th Cir. 2007), dealt "economic injuries," *Alexander v. Casino Queen, Inc*. 739 F.3d 972, 980 (7th Cir. 2014), and destroyed Lara's present and future career prospects. *Pennsylvania State Police v.* 542 U.S. 129, 147 (2004).

Lara pled numerous changes in his job conditions that made work a Pandora's box of quagmires that a self-respecting professional could not endure. *Parrett v. Connersville*, 737 F.2d 690, 694 (7th Cir. 1984) ("anyone with some self-respect [recognized the work] was intolerable.").

The misdeeds here included disciplinary threats (*e.g.*, *Brady* Letter), character assassinations, micro-management, badgering, ostracism, chastisements, falsehoods, slanders, damning Lara's police service and uniform as Lara's "wearing a costume to play a part," surveillance of Lara and his minor child, mockery of Lara's military service, delegitimizing valid military orders, questioning the necessity for military training, false accusations of dishonesty, denunciation that Lara manipulated military leave, bad-faith threats of criminal fraud, criminal larceny, holding a *Sword of Damocles* over Lara's head all but promising arrest, prosecution, and confinement – changes in working conditions so intolerable that Lara had to seek medical attention and resigned as a self-respecting professional who could no longer endure the threats, pressures, and aspersions that diminished Lara's otherwise sharp mind and able body, in order to avoid the looming involuntary termination followed by promised criminal prosecution. To this day, no police department will hire Lara because of how the defendants treated Lara.

## RULE 12(b)(6) STANDARDS

The Rules require "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), otherwise known as "notice pleading." The allegations should be "simple, concise, and direct. Rule 8(e). If the complaint (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level, this requirement is met. *Ashcroft v. Iqbal,* 556 U.S. 662 (2009).

Where, like here, a court is ruling on a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted, the court must accept the factual allegations in plaintiff's complaint as true. *Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984). The complaint must be

liberally construed in favor of the plaintiff, even if it appears that "recovery is remote and unlikely." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

USERRA "is to be liberally construed for the benefit of those who left private life to serve their country in its hour of great need." *Fishgold* v. *Sullivan Drydock and Repair Corp.,* 328 U.S. 275, 285 (1946).

### USERRA'S ANTI-DISCRIMINAION AND ANTI-RETALIAION PROTECTIONS

> A person who is a member of, applies to be a member of, performs, or has performed, applies to perform or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service or obligation.

38 U.S.C. § 4311(a). "An employer may not discriminate in employment against or take any adverse employment action against any person because such person (1) has taken any action to enforce a protection afforded under this chapter . . . or (4) has exercised a right provided for in this chapter. *Id*. at § 4311(b). Section 4311(a) provides in relevant part that a "person who is a member of … a uniformed service shall not be denied . . . retention in employment . . . or any benefit of employment by an employer based on the basis of [military] membership." *See also* 20 C.F.R. §§ 1002.5 and 1002.18.

### CRIMINAL INVESTIGATIONS PLED AS ADVERSE EMPLOYMENT ACTIONS

*Brandsasse v. City of Suffolk, Va*., 72 F. Supp 2d 608, 613 (E.D. Va. 1999), involved an Army Reservist who was also a local police officer who alleged that his employer initiated an investigation as reprisal for his having exercised invoked USERRA. Defendants moved to dismiss claiming that an investigation cannot be an "adverse employment action." *Brandasse*, 72 F. Supp 2d at 612. The court rejected that argument, holding that the facts pled a USERRA claim.

> On its face, the complaint states that the investigation is pretextual and that it was instigated by plaintiff's enforcement of his federal rights. An investigation of the sort plaintiff pleads constitutes retaliatory action within the scope of the statute such that this court can grant relief.

*Id*. at 615. Here, Lara alleged facts that the investigation was an adverse employment action leading to constructive discharge and a part of a series of discriminatory harassments, retaliations, and a pretext for legitimate law enforcement objectives based upon antimilitary animus. Compl. ¶¶ 66 – 78. Defendants wrote, "[we] cannot run shifts like this," in response to Lara's request for a four-hour extension of Lara's report time to defendant's campus to safely complete the drive from Lara's military duty. *Id*. ¶¶ 87 – 88; *Arroyo v. Volvo Group North America*, LLC, No. 14-3618 (7th Cir. October 6, 2015).

      Further delineating the pretextual certitude of defendant's bogus inquisition, Lara described the material falsehoods in which defendant engaged to deceive Lara's Army Reserve commanding officer, all of which negatively affected Lara's civilian job conditions. Compl. ¶¶ 143 – 152. Defendants wrote that Lara's submission of military leave requests amounted to "a pattern of insubordination." *Id*. ¶ 108. Additionally, Lara depicted further lies included in defendant's deceptive inquest and referral to county prosecutorial authorities. *Id*. ¶¶ 188 – 198. Lara posits these defilements are "something more disruptive than mere inconvenience or an alteration of job responsibilities." *Miller v. City of Indianapolis*, 281 F.3d 648, 650 (7th Cir. 2002). Lara pled even more prevarications proving the pretextual nature of the dubious inquisition. Compl. ¶¶ 207 – 215. Lara contended that the workplace discrimination, harassment, hostile work environment, and retaliation had deleterious impacts on his work performance, mindset, pay, benefits of employment, and job conditions.

> During this increased harassment, Lara was distracted from his primary duties as a police officer on a number of occasions. Coe

> noticed that Coe's harassing tactics were working. For example, Coe coerced Lara into taking a shift off when, after Coe "lectured" Lara, Lara appeared to Coe to "not be thinking clearly."

*Id*. ¶¶ 140 – 142. Other negative impacts on Lara's job conditions and work conditions involve ostracism proven by slow to no back up during police calls.

> Coe took active steps to ostracize Lara from Lara's leadership and colleagues. Coe's efforts produced results, as Lara was isolated, looked upon skeptically by other personnel, often responded to calls without back-up, all a part of Coe's design to force Lara out because of Lara's military service.

*Id*. ¶¶ 110 – 114. Lara's allegations exceed and are far more detailed and robust than those pled in *Brandasse*, *supra*, found to have sufficiently pled violations of USERRA involving a police department's retaliatory investigation affecting job conditions. 72 F. Supp 2d at 615.

Likewise, *Ward v. Shelby County*, No. 2:20-cv-02407 (W.D. Tenn. June 25, 2021) found USERRA violated:

> It is also reasonable for a factfinder to determine that the January 2014 Audit Report, the Valentine Investigation [criminal], the Criminal Charge, and Administrative Investigation, were all part of a series of events that were intertwined and motivated by an intent to discriminate against service-members, eventually resulted in the adverse employment action – Plaintiff's termination.

*Id*.

## **UNLIKE HERE, THE INVESTIGATION IN *SWEARINGEN-EL* WAS LEGITIMATE**

Reliance on *Swearnigen-El v. Cook County Sheriff's Department*, 602 F.3d 852 (7th Cir. 2002), for the generic point that a criminal investigation and prosecution does not constitute an adverse employment action, is misplaced when applied to the case at bar.

*Swearingen* involved a correctional officer who was investigated and prosecuted for having sexual relations with a prisoner. 602 F.3d at 856 – 58. Plaintiff was suspended with pay, took vacation, spent a "few hours" in an unlocked cell, and resigned "noting in his paperwork that he

was leaving to attend school." *Id*. at 858. Upon acquittal, plaintiff filed a federal complaint. From *Swearingen* emerged the generic notion that a criminal prosecution is not an adverse employment action because it does not involve plaintiff's job conditions. *Id*. at 859 – 60.

The same cannot be said about the defendant's targeting Lara. In *Swearingen*, there was no adverse employment action involving job conditions. *Id*. at 858. By contrast, the "investigation" into Lara negatively impacted the entirety of Lara's job conditions. Lara was not put on suspension with pay, able to take a vacation, was not jailed for hours in an open cell, nor did Lara resign to attend school. Rather, Lara was subjected to harassment so pervasive as to alter his conditions of employment and create a hostile work environment replete with ongoing and severe retaliation, denial of benefits of employment, and ignoble harassment rightly seen as an abuse of office and oath. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002).[3]

> Coe reported directly to the Chief of Police. In September 2017, Coe removed Hoshaw from duty as Lara's first-line supervisor. Coe had previously been Lara's second-line supervisor (*e.g*., senior rater). Coe detailed himself from a senior rater position over Lara to a direct management position over Lara. Coe unilaterally "stepped down" as a direct report to the Chief of Police to take on the more junior and ostensibly unnecessary duty to manage Lara. Coe did so to micro-manage Lara's civilian employment and "find" something to harm Lara's police career because of Coe's jealousy of Lara's military affiliation, rank, pay, and standing in the community.

Compl. ¶¶ 81 – 86.

As Judge Posner observed in *Parrett*, where working conditions become "infernal," 737 F.2d at 695, an adverse employment action has been pled. *Id*. at 692. Here, defendants' jealousy, animosity, and spite toward Lara motivated by antimilitary animus incited more aggressive hostile

---

[3] The Reserve Officer's Association of the United States ("ROA") in law review number 23032 (June 2023) *available at* www.roa.org/lawcenter, (last visited August 2, 2023), publishes extensive yet discrete topically indexed analyses of USERRA. Without solicitation from Lara, the ROA published that it respectfully disagrees with the court's "narrow" interpretation of the reach of Section 4311(b) which, pursuant to the ROA's view, embraces bad-faith criminal investigations as materially adverse employment actions under USERRA.

acts and comments levelled at Lara and his civilian job conditions than those apparent in *Parrett*. Compl. ¶¶ 90, 97 – 139. Defendants treated no other employee this way. Defendants intended to create intolerable changes in Lara's working conditions and went so far to make threats to kill Lara's promising law enforcement career. *Hackett v. City of South Bend*, 956 F.3d 504, 510 n.1 (7th Cir. 2020) (employment action can be materially adverse under the charge-dissuasion standard, which requires sensitivity to the particular circumstances of an employee). Lara pled:

> Coe advised Lara that "the uniform we wear [RVCPD] was not just a costume to put on and play a part." Coe threatened Lara with a "***Brady Letter***." The Illinois ***Brady List*** includes all known issues of police misconduct, do not call status, decertification, public complaints, use-of-force reports, and citizen reports. Coe knew that placing a *Brady* Letter on the *Brady* List against Lara effectively ends a sworn law enforcement officer's career.

Compl. ¶¶ 153 – 156. Not satisfied that Lara was terrorized and traumatized to the brink, defendants turned up the tormenting heat to make Lara's job conditions intolerable for "anyone with some self-respect." *Parrett*, 737 F.2d at 694; Compl. ¶¶ 164 – 180. Recognizing that the cruelty involved in micro-managing Lara was taking a toll on Lara's skill set, (sharp mind and alertness dulled due to unremitting chastisement, threats, and demeaning castigations about Lara's performance of duty), *id*., ¶¶ 140 – 142, defendants redoubled their hostility and further distracted Lara from his principle law enforcement duties. *Id*. ¶¶ 157 – 163. Still not contented with atrophying Lara's sharp mind and able constitution, defendants abandoned their oath as sworn law enforcement officers and used made-up evidence to compel constructive discharge – a cooked up fictitious order held out as a smoking gun to put a nail in the coffin of Lara's career with defendants. *Id*. ¶¶ 188 – 198; 207 – 215.

Returning to *Swearingen,* the investigation there followed the evidence to natural ends. Divergent, defendants here possessed exculpatory evidence as it was an interview away (Colonel)

but suppressed it or willfully ignored it – violations of Lara's Fifth Amendment rights. The facts as pled demonstrate a concocted miasma to destroy a fellow law enforcement officer who distinguished himself in combat operations and had a young family to provide for. Defendants went from creating unbearable working conditions to beguilingly offering Lara a way out.

> After Coe threatened arrest and prosecution, Lara verbally stated his intent to resign from the RVCPD. Lara did so to end the harassment aimed toward him. Lara did so with the understanding that Coe would not carry out his unwarranted threats to pursue Lara's arrest and prosecution. Lara followed with a written statement indicating his intent to resign. Lara sent this statement because he believed that his only other options were to bear the continued harassment perpetrated by Coe and eventually be terminated. On October 6, 2017, Lara asked to rescind his resignation and Coe refused.

*Id*. ¶¶ 181 – 186.

"Throughout the next twelve days after Lara departed the defendant's employ, defendant's anti-military animus toward Lara's service continued to foment." *Id*. ¶ 187. The defendants wanted more than a pound of flesh from Lara to punish him for Lara's distinguished military service and referred the investigation to county investigators and prosecutors knowing that a fundamental premise – larceny and fraud – was lacking probable cause and was utterly untrue. *Id*. ¶¶ 199 – 219.

When the alleged adverse employment action falls into the "unbearable changes in job conditions such as a hostile work environment or conditions amounting to constructive discharge" category, in order to survive a 12(b)(6) motion, plaintiff must allege facts that show the harassment based on his membership in a protected class was severe or pervasive so as to alter the conditions of his employment and create a hostile or abusive working environment. *Alamo v. Bliss*, 864 F.3d 541, 549 (7th Cir. 2017).

The Seventh Circuit recognizes constructive discharges. *Parrett, supra*. Constructive discharges are actionable under USERRA. *See*, *e.g., Serricchio v. Wachovia Securities LLC,* 658

F.3d 169, 186 – 87 (2d. Cir. 2011) (holding that evidence supported finding of liability on veteran's constructive discharge claim in USERRA case); *Lisdahl v. Mayo Foundation*, 633 F.3d 712, 718 (8th Cir. 2011) (holding that constructive discharge claim "is actionable under USERRA"); *Figueroa Reyes v. Hospital San Pablo del Este*, 389 F. Supp. 2d 205, 231 (D.P.R. 2005) (allegation of constructive discharge is cognizable under USERRA) (*citing Diaz-Gandia v. Dapena-Thompson*, 90 F.3d 609, 614 (1st Cir. 1996)); *Steenken v. Campbell County*, 154 Lab. Cas. (CCH) ¶ 10829, 2007 WL 837173, *4 n.4 (E.D. Ky. 2007) (USERRA plaintiff may establish adverse action by showing he was constructively discharged). *See also Wallace v. City of San Diego*, 479 F.3d 616 (9th Cir. 2007) (evidence sufficient to support finding that plaintiff was constructively discharged in retaliation for exercising his rights as reservist under USERRA) (decided under 38 U.S.C.A. § 4311(b)).

Constructive discharge requires alleging facts from which it can be inferred that a reasonable person would have felt compelled to resign because the working conditions were so intolerable. *Suders*, 542 U.S. at 147 (2004). That is what Lara did.

Upon receiving Lara's resignation letter, a human resources officer stated, "that is all I need, but if they [police defendants] want to press charges, that is on them," strong evidence of the malicious construct to force Lara out and ruin present and future law enforcement opportunities.

### SUMMARY OF WELL-PLED USERRA COUNTS

Count I satisfies Rule 8(a)(2) by detailing the antimilitary animus spawning the hostile work environment which was aimed at Lara alone which were so severe and pervasive to alter for the worse Lara's working conditions. *Alamo*, 864 F.3d at 549. The harassment based on Lara's membership in the class USERRA protects was "infernal" as Judge Posner related in a lesser abusive case upholding a constructive discharge, *Parrett, supra*.

Count II satisfies Rule 8(a)(2) by recounting Lara's invocation of USERRA's protections since 2014 and defendants retaliation against Lara by claiming that Lara abused the military leave policy, was insubordinate, was not trustworthy, lacked integrity, concealed facts from Lara's Army Reserve commander to perpetuate a false narrative, demeaned Lara's reputation for accuracy and honest reporting, surveilling of Lara and his minor child, threating termination followed by arrest, prosecution, and deprivation of liberty resulting in unbearable changes in Lara's job conditions rising to the level of a legally cognizable hostile work environment. *Alamo*, 864 F.3d at 549

Count III satisfies Rule 8(a)(2) by alleging defendants deprived Lara of benefits of Lara's employment, to include lost military leave, lost vacation, finding replacements for shifts when military duty called, lack of back up on police calls, loss of pay and benefits, loss of "status," loss of advancement, mocking Lara's wear of the uniform as a "costume," deriding Lara's duties as "playing a part," denigrating Lara to ostracize him denying Lara retention in employment, and, subjecting Lara to continuous harassment which is a denial of benefits of employment under USERRA to the same extent proscribed by other employment-related civil rights statutes.

Count IV satisfies Rule 8(a)(2) by claiming the unlawful hostile work environment, near incessant retaliation, and threats to discipline Lara based on an utterly false or "fictitious order," terminate Lara, then arrest him, prosecute him, and imprison him, destroying his career and future prospects. As self-respecting as the police officer in *Parrett* who was subjected to lesser maniacal toxicities who resigned and the Seventh Circuit upheld his constructive discharge claim, Lara too resigned to ward off the threatened termination, a criminal case, and thereby preserve future law enforcement opportunities. To this day, defendant's unlawful actions have black-balled Lara from civilian law enforcement.

**DEFENDANT'S MOTION TO DISMISS IS MISPLACED AND SHOULD BE DENIED**

A reasonable reading of defendant's motion lends little critical or helpful analysis to the important grievances for which Lara seeks redress before the citizens of this district. Defendant's motion should be discounted entirely as possessing no value to the instant determinations.

Still, Lara addresses four points. First, defendants rely almost exclusively on the court's dismissal (Doc. 62) and urge extension of the court's reasoning there to dismiss again. Defendants circumscribe the appropriate analysis of Lara's pleading which satisfies Rule 8(a)(2). Defendant's suggestion to the court that "you did it before, so do it again" must fail given the condemnatory facts Lara pled.

Secondly, nowhere among defendant's regurgitation of the dismissal is any application of Rule 8(a)(2) to identify just how Lara's factual allegations fail to meet the "short and plain" statement requirement. The conspicuous absence of that directly relevant if not necessary argument in a Rule 12(b)(6) motion to dismiss is strong evidence that Lara has indeed, academically and in practice, pled sufficiently, amply, and with particularity, (even perhaps complying with the heightened specificity pleading requirements for fraud under Rule 9). To be sure, the defendants are on very clear notice of what their police department ruinously and unlawfully did to a fine, loyal, law-abiding man, father, police officer, soldier, veteran, and neighbor.

Thirdly, defendants repeatedly misquote Lara claiming Lara characterized defendant's shameful and unlawful investigation as a legitimate investigation. Nowhere in Lara's complaint does Lara make such an averment.

Fourth and finally, comments the defendants included in their papers are troublesome and inviting of the court's attention as unnecessary and pernicious *ad hominem* toward Lara directly stating that Lara's grievances and request for redress to pick up the pieces and put his life back

together after defendants terrorized him as pled, are a waste of the court's time, the court's resources, as well as a squandering of taxpayers' funds used to defend the defendants.

Verbatim from defendant's instant motion to dismiss: "***Plaintiff wastes the time and resources of the Court, as well as those of the publicly funded Defendants*** . . ." (Def's. Mem. at 3) (emphasis added). Lacking any citation to law or application of law to the claims Lara described, defendant's dismissive, unnecessary, and vitriolic comments here show the mean-spirited virulence that the police department contemptuously piled upon Lara continues unabated.

## CONCLUSION

Pursuant to Rule 8(a)(2), Lara has sufficiently pled Counts I, II, III, IV, and damages caused by the defendants' USERRA violations set forth and discussed therein. First Sergeant, United States Army Reserve, and Police Officer Vincent P. Lara, prays the court open the doors of justice so that Lara may lay his claims before the good citizens of this district, Lara's countrymen and Lara's neighbors whom Lara has devoted his entire adult life as *Twice the Citizen* to protect and defend against all opponents foreign and domestic, for their sound judgment of his grievances.

Dated: August 4, 2023

**/s/ John N. Maher**
John N. Maher
Illinois ARDC 6237599
Kevin J. Mikolashek
MAHER LEGAL SERVICES PC
17101 71st Avenue
Tinley Park, Illinois 60477
Tel: (708) 781-9212
Facsimile: (708) 781-9693
john@maherlegalservices.com
kevin@maherlegalservices.com
*Counsel for Plaintiff*